Plaintiff instituted this suit on a note executed by S.H. Hetherwick and W.E. Walters for the sum of $880, dated June 11, 1940, due thirty days after date, with eight per cent per annum interest from maturity until paid. The note is made payable to the plaintiff and shows a credit of $717.20 made October 30, 1940. It also calls for ten per cent attorney's fees if placed in the hands of an attorney for collection. The suit is against S.H. Hetherwick and plaintiff's rights against Hetherwick are asked to be reserved.
Defendant in answer sets up four defenses to plaintiff's demand:
1. It was not the intention of the parties that the signers of the note should be held personally liable;
2. That the rate of interest charged by the plaintiff was usurious;
3. That the plaintiff accepted $717.20 in full settlement of the note; and
4. That plaintiff is estopped by his acts to recover from defendant.
After the trial of the suit in the lower Court, plaintiff died and his widow and heirs were made parties plaintiffs. The lower Court rejected the demands of plaintiffs and they perfected an appeal to this Court.
W.E. Walters is a building contractor and erected a number of houses under the Federal Housing Administration plans. It was necessary that he obtain money for the weekly pay rolls of his carpenters, other workmen and materialmen until such time as the FHA loans were completed on each of the houses. S.H. Hetherwick was a mortgage broker handling loans for the FHA and it was through his hands all monies were disbursed upon completion of the houses and the closing of the loans. Dr. Harris, a retired doctor with money to loan, had financed the contractor in the building of fifteen or twenty of these houses and in each instance he would accept from the contractor an order authorizing him paid out of the funds derived from the loan. On this particular job Dr. Harris refused to advance the money on an order, such as formerly had been given him by the contractor, and demanded a note as well as an order. In all his former dealings with the contractor, Walters, he had been paid by checks signed by Hetherwick who, as stated above, disbursed all funds derived from the FHA.
After Dr. Harris demanded a note of Walters, he was given one signed by Walters and Hetherwick for the amount of $880, and on the face of the note was written the following: "Matthews job secured by order of Bank. Case 22-502777 — 3653 Darien Street." After receiving the note, Dr. Harris gave Hetherwick the sum of $800, which was used by Walters to pay his carpenters, materialmen and other laborers on the building. Dr. Harris testified that the extra $80 added to the amount he advanced was not interest but a part of the profits expected to be made. He testified again that he advanced the money on the different jobs for a part of the profits. He also testified that besides the note, he held an order authorizing him paid out of the proceeds derived from the FHA loan, and the carpenters, workmen and materialmen had assigned him their claims against the building.
Dr. Harris, as principal, and the American Employers' Insurance Company, as surety, have executed a bond in the sum of $1000 guaranteeing that the builder and contractor shall promptly pay all bills and claims of all mechanics, builders, artisans, workmen, laborers, sub-contractors, and all other persons who have performed any labor, etc., or furnished any material used in the construction of the building. The bond was given for the express purpose of protecting the owner, mortgagee, and the Lawyer's Title Insurance Company against the possibility of having to pay the second time for such work or materials. The loan secured on this house from the FHA was insufficient to pay all claimants in full. A liquidator was appointed for the contractor, Walters, and a meeting of the creditors held. Dr. Harris attended and participated in the meeting. An agreement was reached by the creditors, including Dr. Harris, in which each agreed to take a proportionately lesser part of his claim and to release the house from all claims and liens held by the respective creditors. Under this agreement Dr. Harris received $717.20, which he credited on the note, and executed a release of any and all claims and liens he held against the building and ground. It was approximately sixteen months thereafter before Dr. Harris made demand upon Hetherwick for payment of the balance due on the face of the note.
Hetherwick and Walters both testified that at the time the note was signed, *Page 731 
it was thoroughly understood between them and Dr. Harris that there was no personal liability and that he would accept in full settlement of the note the amount he received from the profits derived from the loan from FHA; that the note was given merely to show the amount and definitely fix Dr. Harris' claim. This, of course, is denied by Dr. Harris. The lower Court accepted as true the testimony of Hetherwick and Walters and rejected plaintiffs' demands. We do not feel disposed to disagree with the lower Court in that respect. When we consider all the actions of Dr. Harris in regard to this transaction as above set out, it gives credence to the testimony of Hetherwick and Walters. According to the testimony of Dr. Harris, he was not loaning his money, or it is better to say, "advancing" the pay-rolls of Walters for interest, but with the expectation of sharing in any profits that were made. This is further borne out by the testimony of Dr. Harris in response to the following question by his attorney:
"Q. Doctor, why did you loan this money to Mr. Walters? A. Well, the way this thing got started, Mr. Walters and Mr. Hetherwick came out to my house and told me they were building houses. Mr. Hetherwick was taking the applications, in fact, they were working right along together, and they said they made anywhere from three to five hundred dollars out of these houses and said they would split whatever profits there were with me."
Therefore, according to his testimony, Hetherwick was to secure the application, Walters to build the house and Harris take care of the pay-rolls, and all profits were to be equally divided. It is reasonable to believe, under this statement of facts, that Dr. Harris also agreed to share in the losses, as testified to by Walters and Hetherwick. Dr. Harris did not explain why he executed a bond to protect the owner, mortgagee, and Title Company against all claims and liens. For him to have done this, his interest is undoubtedly more than a lender of money to the contractor.
Dr. Harris held by assignment, according to his testimony, laborers' liens and materialmen's liens against the building. If he expected Hetherwick to pay the note, these liens should not have been cancelled by him. If and when Hetherwick had paid the note, he would have been entitled to the liens and under the bond executed by Dr. Harris, he would have had to pay these liens. When Dr. Harris cancelled the liens, he prevented Hetherwick from collecting them upon paying the note, and, at the same time, saved himself from having to pay them under his bond after they fell into Hetherwick's hands. We are of the opinion that Dr. Harris, by his acts in cancelling the liens held by him by virtue of the money advanced by him to pay for the labor and material, is estopped to claim from Hetherwick the payment of the note representing the money advanced and the expected profits.
We find no error in the judgment of the lower Court and it is affirmed, with costs.